**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

GWENDOLYN COLSTON,

    Plaintiff,

v.

THE GREENS AT WYOMING
HOMEOWNERS ASSOCIATION,
SEAN MARCUS, THE GREENS
AT WYOMING, LLC, ALBERT
SALAME III, and KAMIL
SALAME,

    Defendants.

C.A. No. 2024-0063-CDW

### REPORT DENYING MOTION FOR
### DEFAULT JUDGMENT AND MOTION TO DISMISS

Date Submitted:  February 10, 2026
Date Decided:  May 20, 2026

Gwendolyn Colston, Camden-Wyoming, Delaware; *Plaintiff*

Scott E. Chambers, Gary E. Junge, SCHMITTINGER & RODRIGUEZ, P.A.,
Dover, Delaware; *Counsel for Defendants Sean Marcus, Albert Salame, III, and
Kamil Salame*

**WRIGHT, M.**

There are two motions pending before the court: plaintiff Gwendolyn Colston's motion for default judgment[1] and defendants Albert Salame, III and Kamil Salame's motion to dismiss the amended complaint.[2] I recommend the court deny both motions.

## I. BACKGROUND

For purposes of these motions, the facts are drawn from the complaint,[3] the amended complaint,[4] and the documents they incorporate by reference. The court reads these documents with the "forgiving eyes" it uses when reviewing filings from self-represented litigants,[5] credits the well-pleaded allegations in these documents, and draw all reasonable inferences in plaintiff's favor.[6] The court has not engaged in any fact-finding.

The Greens at Wyoming is a residential community located off Southern Boulevard in Wyoming, Delaware.[7] The declarant for the community is The Greens at Wyoming, LLC, a Delaware limited liability company ("Declarant")

---

[1] Pl.'s Request for Entry of Default J., Dkt. 71 ("Motion for Default Judgment").

[2] Am. Mot. to Dismiss of Albert Salame, III and Kamil Salame, Dkt. 69 ("Motion to Dismiss" and cited as "Mot. to Dismiss").

[3] Compl., Dkt. 1 ("Complaint" and cited as "Compl.").

[4] Am. Verified Compl., Dkt. 43 ("Amended Complaint" and cited as "Am. Compl.").

[5] *Richardson v. New Residential Mortg. Loan Tr. 2019RPL3*, 2025 WL 2491199, at *9 (Del. Ch. Aug. 29, 2025) (citing *Hall v. Coupe*, 2016 WL 3094406, at *3 (Del. Ch. May 25, 2016)).

[6] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[7] Compl. Ex. N.

that was owned and controlled by the individual responsible for developing the community, Albert J. Salame ("Mr. Salame").[8]

The community is governed by a "Declaration of Restrictions for the Greens at Wyoming."[9] The Declaration provides for a homeowners association for the community, known as The Greens at Wyoming Homeowners Association, Inc. ("Homeowners Association").[10] The Homeowners Association is tasked with operating and maintaining the community's common areas and stormwater management areas,[11] enforcing deed restrictions,[12] and collecting assessments "for the purpose of promoting the recreation, health, safety[,] and welfare" of the community's residents and owners.[13] Under the Homeowners Association's certificate of incorporation and bylaws, every record owner of a lot in the community is a member of the Homeowners Association.[14] The community is at "99% conveyance," but the Homeowners Association has remained under Declarant control since its formation in 2005.[15]

---

[8] Compl. Ex. O ("Declaration") at 1, 22.

[9] *See generally id.*

[10] *Id.* art. II.

[11] *Id.* art. II, cl. B, § 2(a)–(c).

[12] *Id.* art. II, cl. B, § 2(d). The deed restrictions are seven pages long. *See id.* art. IV.

[13] *Id.* art. II, cl. C, § 1.

[14] Certificate of Incorporation of The Greens at Wyoming Homeowners Ass'n, Inc., Compl. Ex. P ("Certificate") art. 5th; By-Laws of The Greens at Wyoming Homeowners Ass'n, Inc., Compl. Ex. M ("Bylaws") art. III, § 1(a).

[15] Am. Compl. 5, 8.

Mr. Salame was the sole director of the Homeowners Association.[16] The Homeowners Association was voided in the latter half of the 2010s after failing to pay its annual franchise taxes for several years.[17]

Plaintiff Gwendolyn Colston is a homeowner in the community, having lived there since purchasing her home on Ninebark Drive in November 2021.[18] On January 3, 2023, Ms. Colston contacted Sean Marcus, someone she had been told was a representative of the Homeowners Association,[19] to inquire when the Homeowners Association would be holding an annual meeting, and to request an invoice so she could pay her dues.[20] Mr. Marcus promptly sent Ms. Colston an invoice on behalf of the Homeowners Association, but did not respond to her inquiry about the annual meeting.[21] Ms. Colston says she wanted to attend the meeting to raise concerns regarding the community.[22]

On February 13, 2023, Ms. Colston contacted the Office of the Common Interest Community Ombudsperson at the Delaware Department of Justice ("Ombudsperson's Office") seeking assistance to address her concerns.[23] The

---

[16] Certificate art. 7th.

[17] Am. Compl. 12–13; Compl. Ex. B; Dkt. 20 Ex. DD.

[18] Compl. 2; Am. Compl. 4.

[19] Am. Compl. 4.

[20] Compl. Ex. A.

[21] *Id.*

[22] Am. Compl. 4.

[23] Compl. Ex. B.

Ombudsperson wrote her back the same day, expressing surprise at discovering the Homeowners Association had last filed an annual franchise tax report in 2015 and did not have any directors or officers (as of the 2015 report).[24] He explained to Ms. Colston that if the Homeowners Association was indeed rudderless, any member of the Homeowners Association "can file a petition with the Court of Chancery to have it appoint a Receiver . . . to run the [Homeowners Association], at the members' expense[,] until elections can be held so a board can be elected to operate the [Homeowners Association] as required by the declaration, deed restrictions, and the certificate of incorporation."[25] He also explained the services the Ombudperson's Office could offer and encouraged her to obtain and review the Homeowners Association's governing documents.[26]

Ms. Colston attempted to invoke the informal dispute resolution procedures available through the Ombudperson's Office to address her concerns with the community.[27] While this was happening, Declarant attempted to transition management of the community to a management company, but that effort failed.[28] According to Ms. Colston, it failed because

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* Exs. D–E.

[28] Am. Compl. 6; *see also id.* Exs. I–K.

the proposed management company was unsatisfied with the financial records it received regarding the community and the Homeowners Association.[29] It does not appear that any informal dispute resolution ever took place.[30]

Mr. Salame passed away on November 19, 2023.[31] Since his death, Mr. Marcus and Albert Salame, III have continued to act on behalf of the non-existent Homeowners Association.[32]

## II. PROCEDURAL HISTORY

Ms. Colston filed the Complaint on January 24, 2024.[33] In the Complaint, Ms. Colston alleges the community is in poor, chaotic condition with widespread neglect and safety issues, many of them documented by photographs.[34] She says trash is pervasive in ponds and on streets and sidewalks, stormwater ponds and ditches are out of compliance with State requirements, roads are unpaved or incomplete, traffic control and safety signage is missing, and common areas are not maintained.[35] The Complaint also raises a number of governance and financial issues regarding the Homeowners Association, including inconsistent budgets provided to different

[29] *Id.* 6.

[30] *See generally id.*

[31] *Id.* 11.

[32] *See, e.g.*, Compl. Exs. A, F, G, I, K, Q; Dkt. 14 Exs. S–U; Dkt. 20 Ex. EE.

[33] Compl. 1.

[34] Compl. 6, 8; Compl. Exs. C, L.

[35] Compl. 8; Compl. Exs. C, L.

residents, spreadsheets identifying taxes and expenses being paid that may not have actually been paid, and the ongoing assessment of fees with little to show for it.[36]

The Complaint's unorthodox structure makes it hard to pin down what claims are asserted, but Ms. Colston appears to assert claims for violations of (1) the Bylaws, (2) the Declaration, (3) Sections 81-303(c), 81-303(e), 81-303(g), 81-307, and 81-308 of the Delaware Uniform Common Interest Ownership Act ("DUCIOA"),[37] (4) Section 220 of the Delaware General Corporation Law,[38] and (5) the Delaware Litter Control Law, Title 16, Chapter 16 of the Delaware Code.[39] The Complaint requests the following relief:

- An order requiring preventing further collection of annual dues from homeowners.

- A "forensic audit" of the Homeowners Association for every year it has been under Declarant control.

---

[36] Comp. 4–7; Compl. Exs. I–K.

[37] 25 *Del. C.* §§ 81-101 to 81-421.

[38] 8 *Del. C.* §§ 101–398 ("DGCL").

[39] Compl. 1–2, 6–8. It is also unclear who Ms. Colston was attempting to name as a defendant in the Complaint—it could have been any of Declarant, the Homeowners Association, or Mr. Marcus. *See id.* 1 ("I am filing a complaint against the declarant, Sean Marcus for *The Greens at Wyoming Homeowner[s] Association* in Kent County, Delaware"). Ms. Colston repeated the confusing language in the summons. *See* Dkt. 3 ("Please effectuate service upon . . . **The Greens at Wyoming Homeowners Association, Declarant Sean Marcus**[.]"). Schmittinger & Rodriguez, P.A. then purported to enter its appearance on behalf of a single defendant named "The Greens at Wyoming, Home Owners Association, Declarant Sean Marcus," *see* Dkt. 4, before filing an answer on behalf of the Homeowners Association and Mr. Marcus, *see* Dkts. 7, 9.

- An order requiring Declarant to identify the purpose for which a $44,329.59 loan was taken out against the Homeowners Association.

- An order requiring Declarant to relinquish control of the Homeowners Association.

- Installation of an "acting HOA board" for the Homeowners Association.

- Assistance with transitioning the Homeowners Association to a management company.[40]

On May 17, 2024, Ms. Colston filed her first motion for default judgment.[41] The motion for default judgment attached correspondence from the Mayor of the Town of Wyoming which alleges "many years" of "numerous concerns and complaints from residents" regarding these issues, which the letter characterizes as "a general dereliction of duty on the part of the developer in its stewardship of a neighborhood it profited from developing."[42] On May 29, 2024, the Homeowners Association and Mr. Marcus answered the Complaint.[43] On June 21, 2024, the court denied the first motion for default judgment.[44]

---

[40] Compl. 1–2.

[41] Dkt. 5.

[42] *Id.* Ex. A. Ms. Colston submitted this correspondence again, *see* Dkt. 20 Ex. X, and incorporated the later submission by reference in the Amended Complaint. *See* Am. Compl. 21 (incorporating Dkt. 20 Ex. X).

[43] Dkt. 7. The answer was docketed again the next day. *See* Dkt. 9.

[44] Dkt. 17.

On September 26, 2024, Ms. Colston requested a hearing "to address ongoing and unresolved issues" with the Homeowners Association, "particularly concerning the transition from developer control to community control after [Mr. Salame]'s passing."[45] Counsel for the Homeowners Association and Mr. Marcus responded to that letter on October 22.[46]

On November 7, the case was reassigned to me,[47] and I scheduled a status conference for December 13.[48] On December 12, Ms. Colston filed a letter to provide a written status update.[49] I held the status conference on December 13,[50] during which I explained to Ms. Colston that she had not named Declarant as a party in the Complaint, and that for some claims she wanted to pursue—specifically, those based on DUCIOA, if it applies—Declarant was the proper defendant. I also directed Ms. Colston to amend her complaint and explained the process.

On April 9, 2025, Schmittinger & Rodriguez, P.A. moved for leave to withdraw as counsel for the Homeowners Association.[51] The court held

---

[45] Dkt. 20.

[46] Dkt. 21.

[47] Dkt. 22.

[48] Dkt. 23.

[49] Dkt. 24.

[50] Dkt. 25.

[51] Dkt. 28.

another status conference with the parties on April 10,[52] during which the court discussed the proposed amended complaint with Ms. Colston and explained the steps she needed to take in order to successfully file it.

Ms. Colston filed the Amended Complaint on the docket on September 3, 2025,[53] without a motion for leave to amend. The Amended Complaint adds Declarant as a defendant, along with Albert Salame, III and Kamil Salame, alleged to be two of Mr. Salame's heirs and the personal representatives of Mr. Salame's estate.[54] The Amended Complaint goes into more detail on Ms. Colston's concerns regarding the community, the Homeowners Association, and Declarant,[55] and contains a lengthy recitation of events since the Complaint's filing.[56] The Amended Complaint appears to assert claims for violations of (1) the Bylaws, (2) DUCIOA, (3) Section 220 of the DGCL, (4) Sections 311 and 526 of the Delaware Insurance Code,[57] (5) the Freedom of Information Act,[58] (6) the Ombudsman's Act,[59] and (7) Delaware sediment and

---

[52] Dkt. 30.

[53] Am. Compl. 1. During this time, the court held a status conference on May 30, 2025. *See* Dkt. 36.

[54] Am. Compl. 2; *see also* Dkt. 29 (identifying "Albert Salame's Estate" as a proposed additional defendant); Pl.'s Resp. Opposing Mot. to Dismiss, Dkt. 70 ("Opp'n") at 5 (alleging Albert Salame, III and Kamil Salame are the personal representatives of Mr. Salame's estate).

[55] *See, e.g.*, Am. Compl. 2–7, 13–14.

[56] *See, e.g.*, *id.* 9–12, 15–19.

[57] 18 *Del. C.* pt. I.

[58] 29 *Del. C.* ch. 101.

stormwater regulations.[60]  The Amended Complaint continues to seek the same relief as the Complaint, and also seeks relief (1) for pond and ditch maintenance in the community, (2) payment of all outstanding bills and taxes before the homeowners take control of the Homeowners Association, (3) requiring production of all financial documentation for the Homeowners Association, and (4) authorizing "the Greens at Wyoming Ad Hoc Committee" to collect the annual dues to pay for board election assistance and services from the Ombudperson's Office.[61]

On September 8, 2025, Mr. Marcus moved for partial summary judgment, asking the court to rule as a matter of law that he cannot be held individually liable on any claims pleaded in the Amended Complaint.[62]  At a status conference held on October 29, 2025,[63] the court (1) granted Ms. Colston retroactive leave to filed the amended complaint, (2) granted Schmittinger & Rodriguez, P.A.'s motion for leave to withdraw as counsel for the Homeowners Association, and (3) denied Mr. Marcus' motion for partial summary judgment. The court also asked Ms. Colston to file a letter identifying which claims she

---

[59] The court interprets this to mean the Common Interest Community Ombudsperson Act in Title 29, Chapter 25, Subchapter IV of the Delaware Code.

[60] *See* Am. Compl. 2–4, 24–26.  The Delaware Litter Control Law claim appears to have been dropped.  *But see infra* note 64.

[61] *See* Am. Compl. 2–4, 8–9, 25–27.

[62] Dkt. 45.

[63] Dkt. 57.

was bringing against which defendants, and she filed a letter on November 26, 2025.[64]

On November 18, 2025, Ms. Colston requested summonses to serve Albert Salame, III and Kamil Salame, which the Register in Chancery issued the next day.[65] The docket reflects return receipt cards showing service of the summons and amended complaint on Albert Salame, III and Kamil Salame on November 24 and December 1, respectively.[66] On January 7, 2026, Albert Salame, III and Kamil Salame responded to the Amended Complaint in a manner permitted by our court rules, by moving to dismiss for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2).[67]

On January 12, I held my fifth status conference in this case.[68] During the status conference, I noted that Mr. Marcus had not yet responded to the

---

[64] Dkt. 59. Ms. Colston filed a related chart on December 16. Dkt. 64. The November 26 letter and the related chart purport to assert claims that are not mentioned anywhere in the Amended Complaint: (1) a regulation regarding audited financial reports promulgated by the Insurance Commissioner (cited as 21 *Del. Reg.* 441 but located in the Delaware Administrative Code at 18 *Del. Admin. C.* § 301); (2) a Delaware Code section that does not exist (6 *Del. C.* § 18); (3) Article IV, Section 17 of the Declaration; (4) Kent County Code Sections 143-12 and 143-20; and (5) a Delaware Department of Transportation Regulation entitled "Geometric Design of Subdivision Streets, 2 *Del. Admin. C.* § 5.1. *See* Dkts. 59, 64. The Delaware Litter Control Law reappears. *Id.* There is also a vague reference to violations of federal law, *see* Dkt. 59 at 1, but no federal laws are identified.

[65] Dkt. 58.

[66] Dkts. 63, 65.

[67] Dkt. 66.

[68] Dkt. 67; *see also* Tr. of Jan. 12, 2026 Tele. Status Conf., Dkt. 72 ("Jan. 12 Tr.").

Amended Complaint[69] and Ms. Colston had not served a summons and the Amended Complaint on Declarant.[70] Ms. Colston was still mixing up the Homeowners Association and Declarant, so I explained again which entity was which, what Ms. Colston needed to do to move the case forward against Declarant, and the ongoing issues with respect to the Homeowners Association being a void entity.[71]

On January 13, Mr. Marcus filed his answer to the Amended Complaint.[72] The same day, Albert Salame, III and Kamil Salame filed an amended motion to dismiss, reasserting their personal jurisdiction defense under Court of Chancery Rule 12(b)(2)[73] and asserting the Amended Complaint fails to state claims against them on which relief can be granted under Court of Chancery Rule 12(b)(6).[74] On February 10, Ms. Colston filed her opposition to the motion to dismiss,[75] and the Motion for Default Judgment against, seemingly, all defendants.[76]

---

[69] Jan. 12 Tr. 4–5.

[70] *Id.* 5, 17–18.

[71] *Id.* 19–22.

[72] Dkt. 68.

[73] Mot. to Dismiss ¶¶ 1–7.

[74] *Id.* ¶¶ 8–9.

[75] Dkt. 70.

[76] Dkt. 71.

### III.   ANALYSIS

There are two motions under submission:  the Motion for Default Judgment and the Motion to Dismiss.  I address them in that order.

### A.   The Motion for Default Judgment

Default judgments are governed by Court of Chancery Rule 55(b), which states:

> When a party against whom a judgment for affirmative relief is sought, has failed to appear, plead or otherwise defend as provided by these Rules, and that fact is made to appear, judgment by default may be entered as follows:
>
> The party entitled to a judgment by default shall apply to the Court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a guardian, trustee or other representative.
>
> If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If such party has not appeared written notice shall be served if the Court so directs.
>
> If, in order to enable the Court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the Court may conduct such hearings or order such references as it deems necessary and proper.

- 13 -

Ct. Ch. R. 55(b) (paragraph breaks added). The court has discretion when deciding whether to enter a default judgment. *In re 53.1 Acres of Land in Mispillion Hundred*, 2002 WL 31820972, at *2 (Del. Ch. Nov. 27, 2002). The court "give[s] great weight to the policy of deciding claims based on their merits," so it "employs the ultimate sanction of default judgment only under extraordinary circumstances." *Dority v. vanSweden*, 1995 WL 1791080, at *1 (Del. Ch. Jan. 17, 1995). Also, "Delaware courts generally deny motions for default judgment if a party cures its error after receiving notice of a motion for default judgment." *Id.*

With those authorities in mind, I now address the Motion for Default Judgment as to each defendant.

### 1. The Homeowners Association

I deny the Motion for Default Judgment as to the Homeowners Association. Under Delaware law, when an entity is "voided" by the Delaware Secretary of State for non-payment of franchise taxes, it "die[s] a civil death." *Rivera & Kalibrr, Inc. v. Angkor Cap. Ltd.*, 2024 WL 3873050, at *8 (Del. Ch. Aug. 20, 2024). When a corporation is voided "all powers heretofore conferred upon the corporation [] become 'inoperative'" and the corporation "cease[s] to exist and [loses] any standing to appeal and be heard, even if represented by counsel." *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 1990 WL 168276,

at *1 (Del. Sept. 18, 1990) (ORDER). The corporation "has no power to sue, be sued, or wind up." *Rivera*, 2024 WL 3873050, at *8.

The Homeowners Association has been void—civilly dead—since the late 2010s.[77] Because it is void, it lacked the power to be sued when Ms. Colston filed this case in January 2024, and it lacks the power to defend any litigation filed against it, including this case. No one was authorized to act on behalf of the Homeowners Association—be that Mr. Marcus or someone else— including by (purportedly) causing the Homeowners Association to retain Schmittinger & Rodriguez, P.A. to represent the Homeowners Association in the defense of Ms. Colston's lawsuit.

I cannot issue a judgment, whether by default or otherwise, against an entity that does not exist now and did not exist when this lawsuit was filed. Unfortunately, this puts Ms. Colston—and the other homeowners and residents of the Greens at Wyoming—in a difficult situation. If the allegations of the Complaint and Amended Complaint are true, the community has urgent needs that are going unaddressed because those entrusted to care for the community have ignored those needs. The record contains evidence suggesting that individuals have continued to act on behalf of the Homeowners Association after its civil death. They collected dues, wrote checks, interacted with homeowners and government authorities, and otherwise presented themselves

---

[77] Am. Compl. 12–13; Compl. Ex. B; Dkt. 20 Ex. DD.

as authorized agents of the Homeowners Association[78]—of a dead entity—while having no legal authority to do so. Whatever that might mean for those individuals,[79] it means I cannot enter default judgment against the Homeowners Association.

### 2. The Declarant

I deny the Motion for Default Judgment as to Declarant. Ms. Colston has not yet served Declarant with a summons and the Amended Complaint. Until she does, Declarant is not obligated to respond to the Amended Complaint and has not "failed to appear," so default judgment cannot be granted. *See Richards*

---

[78] *See, e.g.*, Compl. Exs. A, F, G, I, K, Q; Dkt. 14 Exs. S–U; Dkt. 20 Ex. EE.

[79] As the court explained in *Rivera*, if an entity is void, it cannot exercise any corporate powers without the agents purporting to act on its behalf committing a crime. *See Rivera*, 2024 WL 3873050, at *2 n.20 ("The legislature meant it: Section 513 'provides that whoever exercises any corporate powers of a corporation whose charter has been forfeited shall be guilty of a crime.'") (quoting *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 715 (1968), and citing 8 *Del. C.* § 513), *9 ("[A]s long as Kalibrr is void, it cannot legally act to implement the Final Judgment without its agents committing a crime."). *See also Boulden v. Albiorix, Inc.*, 2013 WL 1455826, at *2 (Del. Ch. Apr. 10, 2013) ("[O]ne cannot act as the agent of a nonexistent principal.") (citation omitted); *Pierre Inves., Inc. v. Anspach Meeks Ellenberger, LLP*, 2024 WL 1856677, at *6 (6th Cir. Apr. 29, 2024) ("[W]hen the articles of a corporation are canceled, whether by the Secretary of State or otherwise, the authority of the corporation to do business ceases and after such termination officers who carry on new business do so as individuals, lose the protection of the [Ohio] Corporation Act, and are personally responsible for such obligations as they incur.") (quoting *Chatman v. Day*, 455 N.E.2d 672, 674 (Ohio Ct. App. 1982)); RESTATEMENT (THIRD) OF AGENCY §§ 3.07(4) (explaining "[w]hen a principal that is not an individual ceases to exist . . . or when its powers are suspended, the agent's actual authority terminates except as provided by law"), 6.04 (explaining a purported agent making a contract with a third party on behalf of a non-existent principal becomes directly liable as a party to the contract if the purported agent knows or has reason to know the purported principal does not exist).

*v. Hamon*, 178 A.2d 140, 143 (Del. 1962) ("Until a return showing proper service upon the defendant is before the court, judgment by default should not be granted; and upon the defect being shown the judgment should be stricken off.") (citation omitted).

### 3. Sean Marcus

I deny the Motion for Default Judgment as to Mr. Marcus. He answered the Amended Complaint on January 13, 2026, nearly a full month before Ms. Colston moved for default judgment.[80] Mr. Marcus' answer was late, but extraordinary circumstances do not exist to justify departing from the court's strong policy in favor of deciding claims on their merits.

### 4. Albert Salame, III and Kamil Salame

I deny the Motion for Default Judgment as to Albert Salame, III and Kamil Salame. They responded to the Amended Complaint by filing a motion to dismiss on January 7, 2026 and an amended motion to dismiss on January 13. A motion filed under Court of Chancery Rule 12 is a proper response to a complaint. As the court recently observed, "[a] defendant's obligation to respond is governed by Rule 12, which permits a party to file either an answer or a motion responsive to the complaint within the applicable time period." *Gorodetskiy v. Honeywell Int'l Inc.*, 2026 WL 1091872, at *2 (Del. Ch. Apr. 22, 2026). Albert Salame, III and Kamil Salame filed the motion to dismiss

---

[80] *See* Dkt. 68 (filed Jan. 13, 2026), Dkt. 71 (filed Feb. 10, 2026).

late, but they filed it well before Ms. Colston filed the Motion for Default Judgment, and extraordinary circumstances do not exist to justify departing from the court's strong policy in favor of deciding claims on their merits.

## B. The Amended Motion to Dismiss

Albert Salame, III and Kamil Salame have each moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction[81] and Court of Chancery Rule 12(b)(6) for failure to state a claim on which relief can be granted.[82] The court addresses the personal jurisdiction challenge first, because "[a] court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim[.]" *Solomon v. Pathe Comm's Corp.*, 672 A.2d 35, 40 (Del. 1996) (quoting *Branson v. Exide Elec. Corp.*, 625 A.2d 267, 269 (Del. 1993)).

### 1. A Prima Facie Basis Exists For the Court to Exercise Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie basis for the court to find that jurisdiction is proper. *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC*, 2010 WL 1838608, at *11 (Del. Ch. Apr. 28, 2010) (citing Werner *v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 326 (Del. Ch. 2003)). When the court decides the motion on the papers, without an evidentiary hearing, the plaintiff's

---

[81] Mot. to Dismiss ¶¶ 1–7.

[82] *Id.* ¶¶ 8–9.

burden "is a relatively light one." *Id.* (citing *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)). The court construes the record in the light most favorable to the plaintiff and resolves factual disputes in the plaintiff's favor. *Id.* A plaintiff "need not rely solely on the allegations in the complaint but may employ extra-pleading material as a supplement to establish jurisdiction." *Id.*

Personal jurisdiction over a non-resident defendant is proper when (1) there is a statutory basis for exercising personal jurisdiction and (2) subjecting the nonresident defendant to jurisdiction in Delaware would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1228 (Del. 2018). "Compliance with Due Process is satisfied via 'the so-called "minimum contacts" requirement' because, when a nonresident defendant has sufficient minimum contacts with Delaware, that nonresident 'should "reasonably anticipate" being required to defend itself in Delaware's courts.'" *Id.* (quoting *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 438, 440 (Del. 2005)).

Albert Salame, III and Kamil Salame argue that the court lacks personal jurisdiction over them because they are Connecticut residents, they own no property in Delaware, and they have "absolutely no contacts whatsoever with

- 19 -

the State of Delaware."[83]  Their only connection to this case, they say, "is they are the children of the late Albert Salame and are the beneficiaries of his estate."[84]

This characterization of Ms. Colston's theory of liability is wrong.  Ms. Colston does not appear to be asserting claims against Albert Salame, III and Kamil Salame in their individual capacities.  Instead, her theory of liability, generously construed,[85] is that Albert Salame, III and Kamil Salame are parties as the personal representatives of Mr. Salame's estate, which she contends is liable for the wrongdoing because Mr. Salame repeatedly exercised authority on behalf of the Homeowners Association and Declarant, including after the Homeowners Association became void.[86]  In other words, the real party in

---

[83] *Id.* ¶ 3.

[84] *Id.* ¶ 6.

[85] I say "generously construed" because the Opposition repeatedly mixes up the Homeowners Association and Declarant.  For example, the Opposition refers to the limited liability company (meaning Declarant) being voided, *see* Opp'n 4–6, but the voided entity is the Homeowners Association, the entity with "Inc." in its name. Elsewhere, the Opposition seems to combine Declarant and the Homeowners Association, referring to "The Greens at Wyoming HOA, LLC" (*see* Opp'n 3, 9), and it also refers to Mr. Salame as the "sole owner of the Greens at Wyoming Homeowners Association, LLC" (*see* Opp'n 2).  There is no such entity—the Homeowners Association is a corporation, not a limited liability company, and Mr. Salame does not appear to have owned it directly.

[86] Opp'n 4 ("In this case, the claims relate directly to the period in which Albert Salame II and Sean Marcus exercised control . . . including governance, financial management, and fiduciary responsibilities[.]"), 9 ("Albert Salame III and Kamil Salame are the legal representatives of Albert Salame's Estate, therefore they are responsible for closing out his estate, which includes the voided Greens at Wyoming

interest, the party against whom Ms. Colston is seeking to assert claims, is Mr. Salame's estate, for which Albert Salame, III and Kamil Salame are alleged to be its personal representatives.[87]

With that understanding, I deny the motion to dismiss for lack of personal jurisdiction. Under both Delaware and Connecticut law, Albert Salame, III and Kamil Salame are the appropriate parties to be named to pursue claims against Mr. Salame's estate.[88] When a plaintiff asserts a cause of action against the estate of a deceased individual, personal jurisdiction is evaluated from the perspective of the deceased, not the estate or its personal representatives. *See Carlton Inves. v. TLC Beatrice Int'l Hldgs., Inc.*, 1995 WL 694397, at *6 (Del. Ch. Nov. 21, 1995) ("Obtaining jurisdiction over the Lewis Estate therefore turns on whether the decedent would have been amenable to suit in this jurisdiction on the claims now asserted.") (citing 12 *Del. C.* § 1570).

Considering personal jurisdiction from the perspective of Mr. Salame, I find that the Amended Complaint, the Complaint, and the many exhibits

---

HOA, LLC."). *See also* Dkt. 29 (identifying "Albert Salame's Estate" as the proposed additional defendant).

[87] *See supra* notes 54, 86.

[88] *See* 10 *Del. C.* § 3701 ("All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions, so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued."); CONN. GEN. STAT. § 52-599(a) ("A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.")

submitted with them establish what would have been a prima facie basis for exercising personal jurisdiction over Mr. Salame under paragraphs (1) or (2) of 10 *Del. C.* § 3104(c) and the Due Process Clause. Fairly read, these documents allege that Mr. Salame—through his ownership and management of Declarant and through his management and control of the Homeowners Association as its only director—transacted business in this State, performed work in the State, and contracted to supply services or things in this State. Had Mr. Salame not passed away, he would have had to reasonably foresee he might have to appear in Delaware to answer for alleged mismanagement of the Homeowners Association and Declarant—both of which he is alleged to have controlled— and the effects of that alleged mismanagement on the community's homeowners and residents. Delaware law and due process are satisfied.

**2. Albert Salame, III and Kamil Salame Have Failed to Establish That the Amended Complaint Fails to State Claims Upon Which Relief Can Be Granted**

When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true[;] (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim; [and] (3) draw all reasonable inferences in favor of the non-moving party[.]" *Fitzgerald v. Fitzgerald Home Farm, LLC*, 2024 WL 1071970, at *2 (Del. Ch. Mar. 12, 2024) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Cent. Mortg. Co.*, 27 A.3d at 537. Delaware courts must "deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof." *Cent. Mortg. Co.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

Albert Salame, III and Kamil Salame argue that dismissal for failure to state a claim is required because the Amended Complaint "is absolutely devoid of any factual allegations" against them.[89] Not true, at least not for Albert Salame, III,[90] but also not the point. The claim, properly understood, is against Mr. Salame's estate, for which they are alleged to be the personal representatives.[91] The Motion to Dismiss does not argue the Amended Complaint contains no allegations that could conceivably support a claim against Mr. Salame were he still alive today, so I need not proceed further to deny the motion under Rule 12(b)(6).

---

[89] Mot. to Dismiss ¶ 9.

[90] By "not true," I mean the Amended Complaint, combined with other evidence in the record, suggests Albert Salame, III may have acted on behalf of the Homeowners Association after the entity was void and no longer existed. *See, e.g.*, Am. Compl. 13–14 (alleging writing of suspicious checks on the Homeowners Association's checking account after Mr. Salame's death); Dkt. 50 at 2 ("Checks for HOA bills have been signed by Mr. Albert Salame III after Mr. Albert Salame's death."); Dkt. 20 Ex. EE (containing images of checks dated after Mr. Salame's death that appear to be signed by Albert Salame, III).

[91] *See supra* notes 54, 86.

## IV.   CONCLUSION

I recommend that the court deny the Motion for Default Judgment and the Motion to Dismiss.  This is a Report under Court of Chancery Rule 144(b)(1).  Under Court of Chancery Rule 144(c)(2)(A), exceptions to this Report are stayed pending issuance of a Final Report in this case.